UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| ANOVA APPLIED ELECTRONICS, INC., | ) | Civil Action No. : 1:21-CV-10552 (PKC) |
| Plaintiff, | ) | |
| v. | ) | |
| STOREBOUND LLC., | ) | |
| Defendant. | ) | |

---

## SO-ORDERED SETTLEMENT AGREEMENT *and Order of Dismissal*

This SETTLEMENT AGREEMENT (the "Agreement") is made and entered into as of May 4, 2022 by and between **Anova Applied Electronics, Inc.,** ("**Anova**"), a Delaware corporation having its headquarters at 667 Howard Street, San Francisco, CA 94105 ("Anova"), and **Storebound LLC.**, a limited liability company under the laws of the state of New York with its place of business located at 50 Broad Street, Suite 1920, New York, NY 10004 ("Storebound"). Anova and Storebound are each a "Party" and, collectively, the "Parties" to this Agreement.

**WHEREAS**, Anova filed a complaint for patent infringement against Storebound with the United States District Court for the Southern District of New York (the "Litigation");

**WHEREAS**, Anova and Storebound have agreed to settle the Litigation; and

**NOW, THEREFORE,** in consideration of the foregoing and of the covenants, terms, and conditions hereinafter expressed and good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties hereto agree as follows intending to be bound legally:

I.     **DEFINITIONS.** In addition to any other terms defined elsewhere in this Agreement, the following terms shall have the following definitions:

    1.1.     "Effective Date" means May 4, 2022.

    1.2.     "Affiliate" means, with reference to any entity, any other entity that is directly or indirectly controlled by, such entity, and "control" means the power to direct the management and policies of an entity, whether through the ownership of voting securities, by contract, or otherwise.

    1.3.     "Infringe" shall mean directly infringe, contribute to the infringement of, or induce the infringement of, a claim of any patent as more fully set forth in 35 U.S.C. §271 for the United States. The terms "Infringed," "Infringes," "Infringing," and "Infringement" have correlative meanings when used in this Agreement.

    1.4.     "Intellectual Property Rights" means all patents, patent applications (including all divisions, continuations, continuations-in-part, reissues, renewals, extensions,

supplementary protection certificates, utility models, and the like), copyrights (registered and unregistered), trademarks, service marks, know-how, and other intellectual property rights, whether currently existing or hereafter developed or acquired.

1.5. "Patent(s)" shall mean United States Patent Number D853,777 ("the 'D777 Patent"), entitled CIRCULATOR COOKER, which was issued on July 16, 2019

1.6. "Prohibited Product(s)" means the DASH® Chef Series Sous Vide Circulator, shown in Exhibit A, and/or any souse vide circulator that infringes the 'D777 Patent, which is advertised, offered for sale, and/or sold under any trademark.

1.7. "Select Third Party Sellers" shall mean Bed Bath & Beyond, Amazon, Wayfair, Zola, and Sam's Club.

II. **CESSATION OF MANUFACTURE, IMPORTATION OFFER FOR SALE, AND SALE, AND DONATION OF EXISITING INVENTORY.**

2.1. Storebound's Obligations

(a). As of the Effective Date of this Agreement, Storebound and its Affiliates agree to stop manufacturing, distributing, selling, offering for sale, advertising, importing the Prohibited Products in the United States, including directly or indirectly through another company or through associates for the term of the 'D777 Patent.

(b). Storebound agrees to donate its existing inventory of approximately 1,486 units of Prohibited Products to (a) mutually selected third party(ies) and allow an agent of Anova to witness the donation procedure and verify the number of products donated. Storebound agrees not to advertise, directly or indirectly, the donation of the Prohibited Products to any other third party(ies). The donation must occur within 30 days from the Effective Date. In the event a donee(s) cannot be mutually agreed upon in a timely manner by the Parties, the Parties will agree to a reasonable extension of time for the donation.

2.2. Damages and Dismissal of Litigation

(a). Storebound shall pay monetary damages to Anova in the amount of $2,500.00 for all Prohibited Product(s) that Storebound has offered for sale, sold, and/or imported before the Effective Date. In consideration for the payment, Anova and Storebound jointly dismiss, with prejudice, the pending Litigation.

(b). Subject to Section 3.3 to 3.6 of this Agreement, Anova reserves all rights to initiate and litigate one or more infringement actions against any third party sellers offering for sale or selling the Prohibited Products after the Effective Date. The following shall not be considered selling or offering for sale by a third party seller after the Effective Date under this Agreement: (1) the resale of a customer-returned Prohibited Product by the third party seller in which the original sale of the Prohibited Product to the customer by the third

party seller occurred prior to the Effective Date; and (2) the listing of a Prohibited Product on a third party seller web page in which the Prohibited Product is identified as out-of-stock, discontinued or is otherwise unavailable for order fulfillment.

(c). Within 10 business days of the Effective Date, Storebound agrees to perform a search of the internet for any third party seller web pages that meet the criteria of Section 2.2(c)(2) and, for any such web pages identified, send a request to said third party sellers informing them that the Prohibited Product is discontinued and to use its best efforts to have the remaining listing of the Prohibited Product removed within a reasonable amount of time. Storebound will provide evidence of any such requests or best efforts to Anova thereafter. If Anova identifies any third party seller web pages that meet the criteria of Section 2.2(c)(2), Anova will bring the same to Storebound's attention via written notice and Storebound will undertake the aforementioned actions of this sub-section within 10 business days of receipt of such notice. Storebound will use its best efforts to achieve the takedown of any third party seller web pages that meet the criteria of Section 2.2(c)(2).

(d). In the event Anova initiates an infringement action pursuant to Section 2.2(c) of this Agreement for Prohibited Products supplied to said third party seller by Storebound prior to the Effective Date, Storebound reserves all rights and defenses to assist said third party seller to defend against such an action and to join in such action. Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement shall limit Storebound's ability to defend, assist, or join in any action to defend Storebound's customers against an action of infringement initiated by Anova under Section 2.2(c).

2.3. <u>No License</u>. Except as expressly set forth in this Agreement, Anova and Storebound grant no other rights, licenses, covenants, or releases to the other Party. In addition, no other rights are granted by implication, estoppel, or otherwise. Anova and Storebound further acknowledge and agree that nothing herein gives to Anova and Storebound any right, express or implied, to use in any way any Intellectual Property Rights of the other, including but not limited to the Patents, or the name of the other (or their Affiliates) or any other trade name, trademark, brand name, or service mark of the other (or their Affiliates).

### III. RELEASES AND COVENANTS.

3.1. <u>Storebound's Release of Anova</u>. Storebound for itself and its predecessors, successors, and assigns hereby releases and discharges Anova and their successors, assigns, shareholders, owners, managers, directors, officers, employees, agents, and attorneys from and against any and all past, present, or future actions, causes of action, claims for relief, in law or in equity, statutory relief, statutory claims, statutory violations, suits, liens, administrative remedies, injunctions, obligations, torts, agreements, promises, liabilities, demands, damages, losses, or expenses

(including attorney's fees and costs) of any nature whatsoever, known or unknown, fixed or contingent, based upon, arising out of, or relating to the infringement of the Patent(s), whether or not presently known by Storebound. For the avoidance of doubt, the foregoing release shall not apply to performance of Anova's obligations under this Agreement.

3.2. <u>No Challenge of Validity</u>. Storebound further agrees that it will not (a) commence or otherwise voluntarily participate in any action or proceeding challenging or denying the validity of the 'D777 Patent, or (b) direct, support or actively assist any other party in bringing or prosecuting any action or proceeding challenging or denying the validity of the 'D777 Patent. Notwithstanding the foregoing, if Anova, Anova's Affiliates, or any other party should: (1) file an infringement action pursuant to Section 2.2(c) of this Agreement for Prohibited Products supplied to said third party seller by Storebound; or (2) file a cause of action for, threaten, or allege patent infringement of the 'D777 Patent against Storebound, Storebound's Affiliates, or Storebound's end users, Storebound reserves the right to challenge, or to assist or encourage a third party in challenging, the validity of the 'D777 Patent.

3.3. <u>Anova's Release of Storebound</u>. Anova for itself and its predecessors, successors, and assigns hereby releases and discharges Storebound and their successors, assigns, shareholders, owners, managers, directors, officers, employees, agents, attorneys, suppliers, distributors, online service providers, and customers, and each and all of them from and against any and all actions, causes of action, claims for relief, in law or in equity, statutory relief, statutory claims, statutory violations, suits, liens, administrative remedies, injunctions, obligations, torts, agreements, promises, liabilities, demands, damages, losses, or expenses (including attorney's fees and costs) of any nature whatsoever, known or unknown, fixed or contingent, based upon, arising out of, or relating to the Prohibited Products sold by Storebound prior to the Effective Date, whether or not presently known by Anova. Anova's release under this section resolves any and all claims for relief related to the manufacture, supply, distribution, importation, and/or sale of the Prohibited Products sold by Storebound prior to the Effective Date that could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related.

3.4. <u>Anova Covenant Not to Sue.</u> Anova covenants not to file any action, claim, or lawsuit against Select Third Party Sellers based on the past sale of Prohibited Products that were supplied by Storebound prior to the Effective Date so long as said Select Third Party Sellers are no longer selling or offering for sale the Prohibited Products as of the Effective Date.

3.5. <u>Storebound Representation and Warranty Relating to Select Third Party Sellers.</u> Storebound represents and warrants that, to the best of Storebound's knowledge and based on the available information, the following inventories of the Prohibited Product remain at Bed Bath & Beyond, Amazon, and Sam's Club (collectively the "Select Third Party Sellers") as of the Effective Date: (1) Sam's Club – 0 units; (2) Bed, Bath & Betond – 0 units; and (3) Amazon – less than 35 units. Storebound

represents and warrants that it has requested that Amazon return all units in Amazon inventory to Storebound. Storebound further agrees that once Amazon completes the return, Storebound will use its best efforts to delete the Prohibited Product listing page on Amazon. In the event Storebound cannot successfully delete the Prohibited Product listing page on Amazon, Storebound will amend the title associated with ASIN B077ZL5FBZ to "Cooking Appliance."

IV. **PROPRIETARY RIGHTS.** No rights are granted or deemed granted by any Party to any other Party hereunder other than those rights expressly and unambiguously granted by this Agreement.

V. **EXPENSES.** Each Party will bear its own expenses in connection with its performance under this Agreement and with respect to the Litigation, and each Party shall bear its own legal costs and expenses in connection with the preparation, negotiation, and conclusion of this Agreement.

VI. **CONFIDENTIALITY.**

  6.1. Definition. "Confidential Information" shall mean all technical, financial, and non-technical information or data received by a Party from the other Party pursuant to this Agreement. Confidential Information shall not include information that (i) is or becomes generally known or available by publication, commercial use, or otherwise through no fault of the receiving Party, (ii) is already rightfully in the receiving Party's possession without restriction prior to its receipt from the disclosing Party, (iii) is independently developed or learned by the receiving Party prior to its receipt from the other Party as shown by the written records of that Party; (iv) is disclosed in this Agreement; or (iv) is lawfully obtained by the receiving Party from a third party that has the right to make such disclosure.

  6.2. Non-Disclosure. Each Party agrees to maintain secret and confidential all Confidential Information and disclose the same only: (i) with fourteen (14) days advance written notice to the other Party and an opportunity to object to the disclosure; any objection by the other Party shall preclude the disclosure unless specifically required or allowed by the provisions below; (ii) to any governmental body having jurisdiction and specifically requiring such disclosure pursuant to statute, regulation, subpoena or order; (iii) in response to a valid subpoena or as otherwise may be required by law; provided however, that the Party producing a copy of this Agreement shall exercise its best efforts to produce it subject to a protective order; (iv) for the purposes of disclosure in connection with the Securities and Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, and any other reports filed with the Securities and Exchange Commission, or any other filings, reports or disclosures that may be required under applicable laws or regulations; or (v) to a Party's accountants, legal counsel, tax advisors, and other financial and legal advisors, subject to obligations of confidentiality and/or privilege at least as stringent as those contained herein. Prior to any disclosure under sections 6.2 (ii), (iii), or (iv), the Party intending to make the disclosure shall provide the other Party with fourteen (14) days advance written

notice to provide the other Party an opportunity to object to the disclosure; any objection by the other Party shall preclude the disclosure unless specifically required or allowed by the provisions above.

**VII.** **TERM.** Unless terminated earlier in accordance with the terms set forth herein, this Agreement shall remain in effect until the last to expire of the Patent(s).

**VIII.** **BREACH, DISPUTE RESOLUTION, AND TERMINATION.**

    8.1. <u>Breach</u>. If Storebound (including its principals) materially breaches the settlement agreement, Anova agrees to notify Storebound of the alleged breach(es), which initiates a 15-day notice and cure period. During said 15-day notice and cure period, the Parties have the obligation to discuss in good faith regarding the alleged breach(es). During this period, neither party may file any actions related to the alleged breach(es). If after the 15-day notice period expires without either cure or waiver of the alleged breach(es), Anova may revoke the covenant not to sue Storebound regarding the Prohibited Products for any and all causes of action that could have been brought against Storebound regarding the Prohibited Products for all time periods preceding the Termination, including during the period of time that this Agreement was in effect prior to its Termination. The revocation will be effective upon written notification to Storebound.

    8.2. If Anova becomes aware of any Storebound product that Anova believes infringes the 'D777 Patent and was sold by Storebound after the Effective Date, Anova shall notify Storebound or its designated representative in writing. Thereafter the parties shall negotiate in good faith for 30 days in an attempt to informally resolve the dispute. During this period, neither party shall commence an action in any court or agency concerning the dispute nor shall the assertion by Anova be used by Storebound as the basis for declaratory judgment jurisdiction. The parties shall declare an impasse prior to commencing any action in any court or agency concerning the dispute. Furthermore, if an impasse is reached as to whether a future Storebound product infringes the 'D777 Patent, Anova's remedy will be to bring a cause of action for design patent infringement or other applicable causes of action, as it deems fit, but in no event shall a cause of action for breach of this Agreement be brought if Storebound has a reasonable good faith belief that such future Storebound product does not infringe the 'D777 Patent.

    8.3. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without regard to the choice of law provisions thereof.

**IX.** **REPRESENTATIONS & DISCLAIMER.**

    9.1. <u>Representations</u>.

        (a). <u>Anova.</u> Anova represents and warrants that it is the sole owner of all right, title, and interest in and to the Patent(s). Anova represents and warrants that it is the exclusive licensee to the Patent(s). Anova represents and warrants

        that they have all legal rights necessary to grant the releases provided for in this Agreement.

    (b).   <u>Storebound</u>. Storebound represents to Anova that it will exercise its rights under this Agreement in accordance with all applicable laws.

    (c).   <u>Mutual Representations and Warranties</u>. Each Party represents and warrants, that (i) it is authorized to enter into this Agreement; (ii) it has the corporate power to enter into this Agreement and to carry out all of its obligations herein; (iii) this Agreement has been duly executed by Anova and Storebound and is a valid and legally binding obligation of each Party and enforceable against them in accordance with its terms; (iv) it will not create a conflict with or breach the terms of any other agreement to which it is a Party by executing or performing this Agreement; and (v) the execution, delivery and performance by the Parties of this Agreement will not violate any statute, rule or regulation applicable to either, or any order, writ, judgment, injunction, or decree of any court, governmental, or regulatory authority, or arbitrator to which either Party is subject.

9.2.   <u>Disclaimer</u>. EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH ABOVE, NOTHING IN THIS AGREEMENT SHALL BE CONSTRUED AS A WARRANTY, EXPRESS OR IMPLIED, OR REPRESENTATION BY ANOVA AS (a) TO THE VALIDITY OR SCOPE OF THE PATENT(S); (b) A WARRANTY OR REPRESENTATION THAT ANYTHING MADE, USED, SOLD OR OTHERWISE DISPOSED OF UNDER THIS AGREEMENT IS OR WILL BE FREE FROM INFRINGEMENT OF A PATENT(S) OF A THIRD PARTY; (c) A WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE; (d) A REQUIREMENT THAT ANOVA SHALL FILE ANY PATENT APPLICATION, SECURE ANY PATENT, OR MAINTAIN ANY PATENT IN FORCE; (e) AN OBLIGATION TO BRING OR PROSECUTE AN ACTION(S) OR SUIT(S) AGAINST A THIRD PARTY(IES) FOR INFRINGEMENT OF ANY PATENT; (f) AN OBLIGATION TO FURNISH ANY MANUFACTURING OR TECHNICAL INFORMATION, OR ANY INFORMATION CONCERNING PENDING PATENT APPLICATION(S); (g) CONFERRING A RIGHT TO USE IN ADVERTISING, PUBLICITY, OR OTHERWISE ANY TRADEMARK OR TRADE NAME OF ANOVA; OR (h) GRANTING BY IMPLICATION, ESTOPPEL, OR OTHERWISE ANY RIGHT(S) UNDER A PATENT(S). STROBOUND EXPRESSLY ACCEPTS SUCH DISCLAIMER OF ANY WARRANTY DESCRIBED IN THE PRECEDING SENTENCE OF THIS AGREEMENT OR BY OPERATION OF LAW.

X.   **LIMITATION OF LIABILITY**. IN NO EVENT SHALL ANOVA OR ITS AFFILIATES, OWNERS, SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, OR AGENTS BE LIABLE IN CONNECTION WITH ITS DUTIES UNDER THIS AGREEMENT FOR INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, ECONOMIC DAMAGE, INJURY TO PROPERTY OR LOST PROFITS, REGARDLESS OF WHETHER STROEBOUND SHALL BE ADVISED, SHALL HAVE

OTHER REASON TO KNOW, OR IN FACT SHALL KNOW OF THE POSSIBILITY OF ANY OF THE FOREGOING.

XI. **MISCELLANEOUS.**

11.1. <u>Further Actions</u>. Each of the Parties hereto and their respective counsel shall take such actions and execute such additional documents as may be reasonably necessary or appropriate to consummate or implement the settlement contemplated by this Agreement.

11.2. <u>Waivers</u>. No express or implied waiver by either Party of any provision of this Agreement shall constitute a continuing waiver of that or any other provision. No express or implied waiver by either Party of any breach or default by the other Party shall constitute a waiver of any other breach or default of the same or any other provision of this Agreement.

11.3. <u>Assignment</u>. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by the Parties and their successors and assigns. Notwithstanding the foregoing, Complainants shall not assign, sell, or otherwise transfer or grant any ownership right or right to enforce or recover under any Patent(s) to any other Party unless an assignee or transferee first agrees to observe all rights, covenants, and releases provided by Anova and such other Party executes an agreement to be bound by all of the terms and conditions of this Agreement. In addition, notwithstanding the foregoing, this Agreement and the rights and obligations hereunder may not be assigned, by operation of law or otherwise, by Storebound without the express prior written consent of Anova, which consent shall not be unreasonably withheld. Any assignment or transfer in violation of this Section shall be null and void.

11.4. <u>No Third-Party Beneficiaries</u>. No person or entity not a Party to this Agreement shall have or acquire any rights by reason of this Agreement nor shall any Party have any obligation or liability whatsoever to any such person or entity by reason of this Agreement, except as otherwise expressly provided for herein.

11.5. <u>Headings</u>. The headings contained in this Agreement have been inserted for convenience of reference only. They shall not be deemed to be a part of this Agreement and shall in no way affect the interpretation of this Agreement.

11.6. <u>Notices</u>. Any notice required or permitted to be given under this Agreement shall be in writing and may be delivered by registered or certified United States mail, return receipt requested, or in person or by overnight courier, addressed or given to the other Party at its address set forth below or at such other address as the Parties may from time to time advise each other in writing pursuant to this section. Notices shall be deemed given and received on the on the date of actual receipt if delivered in person or sent by overnight courier. If sent by certified mail, return receipt requested, the notice shall be deemed given and received as of the date indicated on the return receipt.

| **To Anova:** | **To Storebound:** |
|---|---|
| Electrolux North America, Inc. | Storebound, LLC |
| Attn: Ray Ashburg | Attn: Evan Dash |

| | |
|---|---|
| Electrolux North America, Inc.<br>Legal Department<br>10200 David Taylor Drive<br>Charlotte, NC 28262 | 50 Broad St.<br>12th Floor<br>New York, NY 10004 |

11.7. <u>Severability</u>. The provisions of this Agreement are severable, and should any provisions be determined, by agreement of the Parties, or by a court of competent jurisdiction, to be invalid, illegal, or unenforceable, the Parties and the court shall have the right to modify the provision, within the original intent of the Parties, to make the provision valid and enforceable. In the event any provision of this Agreement is modified pursuant to the terms of a valid and enforceable court order, the Parties agree in good faith to modify this Agreement to account for such modification in a manner that complies with applicable law. Moreover, the remainder of this Agreement shall remain in full force and effect.

11.8. <u>Governing Law</u>. This Agreement shall be governed by, construed, interpreted and enforced in accordance with the laws of the State of New York, USA, without regard to conflict of law principles.

11.9. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, and counterparts by facsimile or other electronic means (e.g., PDF), all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute this Agreement by signing any such counterpart. Signatures delivered by facsimile transmission or other electronic means (e.g., PDF) shall be binding for all purposes hereof.

11.10. <u>Acknowledgment</u>. The Parties certify, acknowledge, and agree as follows: (i) the Parties have carefully read the terms of this Agreement and understand their terms and effects; (ii) the language of this Agreement has been approved by counsel for each Party and neither Party (nor their respective counsel) shall be deemed to be the draftsman of this Agreement; (iii) any rule of construction to the effect that ambiguities are to be resolved against the drafting Party will not apply in the interpretation of this Agreement; and (iv) the Parties have signed this Agreement voluntarily and knowingly in exchange for the consideration described herein, which they acknowledge is satisfactory to them and which they acknowledge is in addition to any other benefits to which they are entitled.

11.11. <u>Entire Agreement</u>. This Agreement, including its exhibits and attachments, contains the entire and only agreement between the Parties and supersedes all preexisting agreements (oral or written) between them respecting its subject matter. Any representation, promise, or condition in connection with such subject matter that is not incorporated in this Agreement shall not be binding on either Party. No modification, renewal, extension, waiver, or termination of this Agreement or any of its provisions shall be binding on the Party against whom enforcement of such modification, renewal, extension, waiver, or termination is sought, unless made in writing and signed on behalf of such Party by one of its executive officers. The Parties may not waive this requirement by oral agreement.

DocuSign Envelope ID: ...
Case 1:21-cv-10552-PKC Document 36 Filed 06/01/22 Page 10 of 10
Case 1:21-cv-10552-PKC Document 35 Filed 05/31/22 Page 10 of 10

11.12. <u>No Admissions.</u> Nothing in this Agreement shall be interpreted as an admission of the validity, invalidity, enforceability, or unenforceability of any Patent(s) or as an admission of infringement of any Patent(s).

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and made effective as of the Effective Date.

**AGREED TO:**

**Anova Applied Electronics, Inc.**

By: *Stephen Svajian* (DocuSigned)

Name: Stephen Svajian

Title: CEO

**Storebound LLC.**

By: *Evan Dash* (DocuSigned)

Name: Evan Dash

Title: CEO

*The action is dismissed with prejudice on the parties' consent.*

**SO ORDERED:**

Dated: New York, New York
June 1, 2022

*[signature]*
P. Kevin Castel
United States District Court Judge

- 10 -